## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JANE DOE,                                    ) | |
|                                              ) | |
|     **Plaintiff,**        ) | |
|                                              ) | |
| vs.                                          ) | **Case No. CIV-25-107-G** |
|                                              ) | |
| **(1)  INDEPENDENT SCHOOL**        ) | |
|      **DISTRICT NO. 69 OF CANADIAN** ) | |
|      **COUNTY, a/k/a Mustang School** ) | |
|      **District,**   ) | |
| **(2)  SEAN MCDANIEL, individually,** ) | |
|      **and in his capacity as**    ) | |
|      **Superintendent of Mustang High** ) | |
|      **School**      ) | |
| **(3)  RAYMOND THOMAS GARNER,**    ) | |
|                   **individually,** ) | |
|      **Defendants.** ) | |

## ORIGINAL COMPLAINT

### THE PARTIES, JURISDICTION, & VENUE

1.    Plaintiff Jane Doe attended Mustang High School from August 2013 to May 2017. Plaintiff was a minor while attending Mustang High School and was required to attend school per Oklahoma Statute 70 O.S. § 10-105. While attending Mustang High School, Plaintiff was a resident of Canadian County, Oklahoma.

2.    Defendant Independent School District No. 69 of Canadian County a/k/a Mustang School District ("Mustang School District") is a public educational institution located in Canadian County, Oklahoma, is formally titled Independent School District No. 69 of Canadian County, a/k/a Mustang School District, and is an Oklahoma school district organized and existing under the laws of the State of Oklahoma with its principal office in Canadian County, Oklahoma. Mustang School District receives federal funding and is subject to Title IX of the Education Amendments of 197220 U.S.C. §§ 1681-1688.

1

3.      Defendant, Sean McDaniel, served as the Superintendent of Mustang School District from 2012 to 2018 and during this period of time Plaintiff attended Mustang High School. McDaniel is a citizen of the State of Oklahoma and resident of this judicial district. Upon information and belief, McDaniel participated in covering up the sexual assault and ongoing course of harassment that occurred as described below. McDaniel is sued in his individual capacity and in his capacity as superintendent of Mustang School District.

4.      Defendant Raymond Thomas Garner ("Garner") was a teacher at Mustang High School from 1990 through 2023. At all relevant times, Garner was a citizen of the State of Oklahoma and a resident of Cleveland County, Oklahoma.

5.      This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

6.      This Court also has subject matter jurisdiction under 28 U.S.C. § 1343, which gives district courts original jurisdiction over any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

7.      Pursuant to 28 U.S.C. § 1367, this Court also has subject matter jurisdiction over pendent state law claims regarding the violation of the Oklahoma Constitution, state statutes, and common law torts.

8.      This action also redresses the violation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution under 42 U.S.C. § 1983.

9.      Venue is proper in this district, as the Defendants do business in this district, the events giving rise to the claims occurred (at least in part) in this district, and the Defendants reside and/or have their principal place of business in this district.

## FACTUAL BACKGROUND

### Garner's Grooming and Abuse of Plaintiff at Mustang High School

10.     The Mustang School District should provide a safe learning environment for its students. It failed to do so.

11.     The Mustang School District failed to provide its students an environment free of sexual predators. While on school grounds and during school hours, a sexual predator repeatedly preyed on students.

12.     The sexual predator was a Mustang High School teacher, Raymond Thomas Garner. Garner molested and committed lewd acts, including but not limited to raping, inappropriately touching, verbally abusing, harassing, stalking, intimidating, threatening, and controlling, Plaintiff while at Mustang School District from 2014-2017, on campus, and during school hours.

13.     Garner became a teacher in Mustang in 1990 and was an advisor for students that were in the National Honor Society, such as Plaintiff.

14.     Garner immediately gave Plaintiff special treatment at school, exhibiting what is commonly referred to as "grooming behavior" toward Plaintiff.

15.     For example, when Plaintiff first attended Garner's Pre-AP Chemistry Class, Fall 2014, Garner insisted that Plaintiff sit in the front of the class because she was too smart to sit in the back; Plaintiff was comfortable with Garner and respected him as a teaching professional, until the end of the Fall 2014 semester when Garner confessed to Plaintiff that he had developed feelings for her, stronger than those that a teacher should have towards a student.

16.     Plaintiff asked if Garner's feelings towards her were similar to feelings you would

have towards a daughter; Garner responded in the negative and said that he was having sexual thoughts about Plaintiff. Garner told Plaintiff that he was worried she would turn him in, and he would lose his job.

17.    For the remainder of the semester, Plaintiff questioned Garner's motive and why he was feeling this way about her. Plaintiff asked Garner about his wife and his family, and he would just say that Plaintiff was a very special person, very attractive, and sexy. Garner told Plaintiff that he was no longer intimate with his wife and that if he could live in a world where he could be with Plaintiff, he would sacrifice the relationships he had with his loved ones.

18.    On another occasion, Garner walked up behind Plaintiff in the classroom and as she walked away, he lifted her shirt and pulled her leggings away from her waist to see her butt and underwear. Garner then pulled Plaintiff close to him and pressed his erection against her. Garner whispered, "You have no idea what you do to me." Following this encounter, Garner left a sticky note in Plaintiff's backpack that said, "Thank you," and included a smiley face.

19.    Over the 2014 Christmas break, Garner began sharing his sexual fantasies with Plaintiff.

20.    On or around Spring 2015, Garner continued to pursue Plaintiff. Garner would frequently ask Plaintiff to meet him in the storage closet. Garner told Plaintiff he feared that if he kissed her, he would go too far, so instead he would kiss his fingers and press them up against Plaintiff's lips. Throughout the semester, Garner continued to share his sexual fantasies with Plaintiff.

21.    On or around April 2015, Plaintiff's grandmother passed away. Plaintiff confided in Garner about her loss, so he took this opportunity to continue grooming Plaintiff. At this time, he gave Plaintiff the nickname "Princess."

22.    Throughout the semester, Garner would bring Plaintiff candy, drinks, and snacks.

He would text Plaintiff every night before bed. Garner continued to share his sexual fantasies with Plaintiff and his advancements were getting bolder.

23.     On one occasion during the semester, Garner put his hand into Plaintiff's pants to touch her. He would then lick his fingers and tell Plaintiff that she was delicious. He encouraged Plaintiff to not wear jeans because they were harder to get into. Garner instead recommended that Plaintiff wear leggings, skirts, or dresses.

24.     Towards the end of the Spring 2015 semester, Garner told Plaintiff that he wanted to take her somewhere different after school. Garner walked Plaintiff to the other side of the "K-Hall" and unlocked the classroom and office belonging to Mrs. Connie Garner, Garner's wife. Garner placed his hands under Plaintiff's shirt and began groping her breasts and kissing her neck. Garner told Plaintiff to sit in his wife's chair and removed Plaintiff's bottoms. Garner lifted Plaintiff's legs and began to penetrate Plaintiff with his fingers and performed oral sex on her.

25.     During this encounter, Garner heard a noise outside and told Plaintiff to get down and hide. A custodial employee tried to unlock the door and Garner said he was changing and to come back in a moment. Garner told Plaintiff to hide until he made sure nobody was outside of his wife's classroom.

26.     For the remainder of the Spring 2015 semester, Garner would take Plaintiff into the chemistry storage department where he would penetrate Plaintiff with his fingers, perform oral sex on her, and asked her to perform oral sex on him. Garner continued to contact Plaintiff throughout the summer.

27.     On or around the Fall 2015 semester, Plaintiff was elected President of the National Honor Society. Garner was the advisor for the club, which meant that he would be spending more time with Plaintiff before and after school for meetings and volunteer events.

28.     On or around the Fall 2015 semester, Garner shared with Plaintiff that his wife

taught at the Canadian Valley Vo-Tech on Tuesdays and Thursdays. Garner suggested that Plaintiff should come to his home because it would be more private there.

29.     Plaintiff went to Garner's home, and he said he just wanted to "cuddle" on the couch. Garner said that he did not trust himself to go into one of the bedrooms because he would "go too far." During this time, Garner expressed to Plaintiff that he loved her.

30.     On one occasion, Garner led Plaintiff to his son's bedroom and asked if he could be "inside" Plaintiff. Plaintiff had never had sexual intercourse before and responded that she was not sure. Garner promised that he would not hurt Plaintiff and started to perform oral sex on her. During this encounter, Garner said to Plaintiff, "Wouldn't it feel better with something bigger inside you." Plaintiff continued to hesitate, so he made her perform oral sex on him and let the subject go for the remainder of the night.

31.     The following week, Garner penetrated Plaintiff with two different dildos. Garner told Plaintiff that one dildo was a gift to Garner and his wife from a Christmas gift exchanged and the other dildo he personally picked out for Plaintiff at the store. After Garner penetrated Plaintiff with two dildos, he penetrated Plaintiff with his penis. Plaintiff was only 16 years old at the time. Garner continued to inappropriately touch and rape Plaintiff throughout the remainder of the semester.

32.     Over the 2015 Christmas break, Garner kept in contact with Plaintiff, but Plaintiff did not see him. Garner began to refer to Plaintiff as his wife. He would talk about running away with Plaintiff and changing their names. Garner began to obsessively text Plaintiff regarding his fantasies and if she seemed disinterested, he would spam Plaintiff's phone with the following messages: he needed to find a lawyer; Plaintiff was a tease and had been leading him on; and if Plaintiff was going to turn him in, he needed to know.

33.     Garner told Plaintiff that if she were to ever share with anyone what had been going

on, he would ensure that Plaintiff would be "taken down with him" and that "nobody would believe [Plaintiff]" because of his upstanding reputation in the community, and at the school. Garner told Plaintiff that her parents, family, and friends would be ashamed of her and that she would never get into a good college. Garner insisted that he was the only man that would treat Plaintiff this nicely.

34.     Garner was aware of a boy that Plaintiff liked in her theatre class. Garner told Plaintiff that liking someone other than him was disloyal and showed Plaintiff the boy's grades, to illustrate that the boy was not good enough for Plaintiff. This conversation turned into an argument between Plaintiff and Garner, to the point where Garner was incessantly texting Plaintiff until three and four in the morning, over a period of three days.

35.     On or around the Spring 2016 semester, another student asked Plaintiff to prom in front of Garner. Plaintiff saw Garner glare at her which made her feel incredibly uneasy and knew Garner would later argue with Plaintiff. Plaintiff told the student that she would have to ask her mom for permission, even though she wanted to say "yes" to the student's proposal.

36.     On or around the time Plaintiff was asked to prom, Garner told Plaintiff that it was the second time she has cheated on him and began to ignore Plaintiff. During this time, Garner was not requiring Plaintiff to turn in her homework and he would not grade her exams. Plaintiff was fearful that her grade would drop significantly because of the grudge that Garner was holding against her.

37.     Garner later "forgave" Plaintiff and told her that if she met someone, he needed to know so he could "emotionally prepare." Throughout the remainder of the semester, Garner would take Plaintiff into the storage closet and write her notes. The notes Garner would write to Plaintiff said the following: IYPW (Is Your Pussy Wet); I like you; Who loves you; I want you; You please me; Kissing you makes me happy; My Princess; I'm so happy that you're mine; Every drop; I love

your body; I love your lips; Get out of my pants; One kiss for each lip; and Something to do with your mouth – along with numerous other short quotes *(Exhibit 1 – Sticky Notes Written by Garner)*.

38.    Over the 2016 Christmas break, Garner continued to contact Plaintiff. Garner invited Plaintiff to his home on one or two occasions.

39.    On or around the Spring 2017 semester, Plaintiff was assigned as the science department aid and was again elected as the National Honors Society president. Garner continued his relations with Plaintiff throughout the semester.

**Garner Continued to Exploit, Harass, Intimidate, Threaten, and Control Plaintiff from the Time of her Graduation from Mustang High School All the Way Until the Day Garner was Arrested for Rape, Lewd Acts with a Child, and Forcible Sodomy on January 27 or after February 1, 2023**

40.    On or around Fall 2017, Plaintiff started college at Oklahoma City University. Throughout this time, Garner continued to contact Plaintiff and see her in person. When Garner was sexually inappropriate with Plaintiff, she would tell him that she was "too busy" to see him. Plaintiff would lie about being with family or studying so she would not have to deal with Garner's obsessive questioning.

41.    On or around 2019, Plaintiff began dating someone and Garner let Plaintiff know that he did not approve of the relationship. Garner did not speak with Plaintiff for roughly 3-4 months. Garner began texting Plaintiff again and asked if they could at least text each other good morning, good night, and talk occasionally.

42.    On occasion, Garner would go to dinner with Plaintiff and another student that graduated from Mustang High School. Garner would touch Plaintiff at dinner and ask her to pull into random parking lots to meet. On one occasion, when Plaintiff left a restaurant she and Garner were at, Plaintiff tried to keep driving away, but Garner called her and told her to turn around. Plaintiff was always concerned that if she did not comply with Garner's requests, he would ruin

her career, life, and seriously harm her.

43.    Garner continued to contact, intimidate, and try to control Plaintiff up until the day he was arrested (February 1, 2023). According to the Arrest Affidavit (***Exhibit 2 – Arrest Affidavit***), Garner was arrested for over 100 counts of rape, over 100 counts of lewd acts to a child, and over 100 counts of forcible sodomy to Plaintiff.

**After Garner's Arrest, Plaintiff Discovered for the First Time that there were Other Victims of Garner and that Mustang School District Knew of Garner's Conduct Before Garner Abused Plaintiff**

44.    After Garner's arrest and within two (2) years of the filing of this Complaint, Plaintiff learned, for the first time, that Mustang School District knew of some of Garner's issues giving rise to this lawsuit and that there were other stories and victims stemming from Garner.

45.    Upon information and belief, around January 2023, a "Female 1" from Mustang High School stated that she knew Garner was having inappropriate relations with two female students that she went to school with, which took place on or around 2014-2017.

46.    Garner exhibited similar behavior with numerous female students at Mustang High School throughout his career. For example, Garner would often make sexual innuendos to other females in his classroom or find other ways to make his female students uncomfortable.

47.    Upon information and belief, "Female 2" from Mustang High School always felt intimidated by Garner and thought that he was terrifying. Female 2 had AP Chemistry with Garner and because of the extreme anxiety he caused her, she begged her guidance counselor to be transferred to a different class.

48.    Upon information and belief, on or about the early 2000's, "Female 3" came forward to the Mustang School District Administration regarding Garner's inappropriate conduct towards her. Mustang High School did not do a thorough investigation and instead, "swept the issue under the rug."

9

49.     Upon information and belief, "Female 4" from Mustang High School had Garner as her chemistry teacher. Female 4 felt that Garner had students that he favors, all of which were female. When a female student would ask a question, Garner would stand uncomfortably close to that student. According to Female 4, Garner made sure his students knew of the influence and power he had as a teacher since he had been teaching for so long.

50.     Upon information and belief, Garner was sexually inappropriate to "Female 5" from Mustang High School. Garner would often lean on Female 5 while she was seated in class, causing his pelvis to come in contact with her arm. On a separate occasion, he placed his hand on her shoulder to massage it. Additionally, there was one day when Garner kept the Female 5 after class and waited for the other students to leave the classroom. Garner then sat on top of the desk closest to her and spread his legs, so he was at the student's eye level. Garner then proceeded to berate her for being a distraction in class. Due to the trauma Garner caused her, Female 5 had to seek outside therapy. Female 5 did not report Garner to the school because she feared he would interfere with her college admittance and scholarships. The things that Garner said to her will "stick with her for the rest of her life".

51.     Upon information and belief, on or around 2004, Garner was investigated by Mustang School District for his inappropriate conduct and placed on administrative leave. Despite information of impropriety by Garner, Mustang School District did not terminate or otherwise appropriately address Garner's conduct.

52.     Upon information and belief, on or around 2007, Garner was investigated by Mustang School District for his inappropriate conduct and placed on administrative leave. Despite information of impropriety by Garner, Mustang School District did not terminate or otherwise appropriately address Garner's conduct.

53.     Upon information and belief, on or around 2017, Garner was investigated by

Mustang School District for his inappropriate conduct and placed on administrative leave. Despite information of impropriety by Garner, Mustang School District did not terminate or otherwise appropriately address Garner's conduct.

54.    Upon information and belief, Mustang School District received other numerous complaints about Garner regarding his inappropriate conduct.

55.    Overall, Mustang School District was aware of and had notice of Garner's inappropriate conduct towards students at the time Garner first began abusing Plaintiff.

56.    Because of the Mustang School District's lack of appropriate response to Garner's misconduct, the Mustang School District allowed Garner to remain on campus and to ultimately abuse Plaintiff.

57.    The Mustang School District also facilitated Garner's predatory behavior in various other ways. For example, the Mustang School District permitted Garner to be the advisor for the National Honor Society, which included additional, unsupervised time with female students before school, during school, and after school.

58.    The Mustang School District failed to implement and/or execute policies in regard to the reporting of sexual misconduct to state agencies to protect students from further abuse and to end the access to students of suspected predators. These failures resulted in the deprivation of Plaintiff's constitutional, statutory, and common law rights.

59.    The Mustang School District failed to ensure that all its employees, including administrators, were properly hired, trained, retained, and supervised to perform their jobs.

60.    The Mustang School District is responsible for the acts and omissions of its employees, including its administrators, during the course and scope of their employment.

61.    The Mustang School District is responsible for the acts and omissions of the school district employees who had knowledge of Garner's activities, or propensity to engage in such

activities.

**Plaintiff Suffers from Legal Disabilities and was Subject to False, Fraudulent, Misleading, and Unlawful Conduct by Garner that Caused Plaintiff to Sit on Her Rights**

62.     Even though Plaintiff did not discover Mustang School District's prior notice and unlawful conduct as to Garner until after Garner was arrested, Garner caused Plaintiff's legal disabilities and caused Plaintiff to sit on her rights from the time her first abused her until the day he was arrested.

63.     Plaintiff was physically, mentally, and emotionally injured by Garner's misconduct and the Mustang School District's failure to adequately respond to Garner's behavior. Garner had Plaintiff convinced that if she ever came forward about his misconduct, she would be known as the one who ruined his life, her parents would be ashamed, she would be publicly shamed, nobody would believe her, and she would never be successful in college or dental school. Garner also specifically threatened Plaintiff that she would be "taken down with him" and he would "take her down" if Garner's abuse ever came to light. Based on these comments, similar threats, and Garner's overall abuse and continued control of Plaintiff, Plaintiff feared for her life and feared that Garner would kill her if she ever came forward.

64.     On numerous occasions, Garner would engage in false, fraudulent or misleading conduct which was calculated to lull Plaintiff into sitting on her rights.

65.     Up until the day Garner was arrested, he would use various tactics to control Plaintiff and silence her. Garner would blame Plaintiff for everything that he did to her and would constantly threaten Plaintiff if she were to ever come forward. As of January 27, 2023, the date of Garner's arrest, Plaintiff was still under the direction and control of Garner. Plaintiff was afraid of Garner and his threats of retaliation; therefore, she never felt as though she could report what Garner was doing to her. She knew that Garner had the ability to seriously harm or kill her.

66.    At no point was Plaintiff a willing participant. Plaintiff was willing to "take this to the grave" because she feared for her educational career and her life.

67.    Indeed, after Garner's arrest, the assistant district attorney requested that Garner wear an ankle monitoring device, for Plaintiff's safety.

68.    Garner continued to groom Plaintiff up until the day he was arrested, which was a part of the sexual abuse. As the grooming went on, Garner continued to benefit sexually from the situation that was created.

69.    Plaintiff suffered and continues to suffer from legal disabilities.

70.    Plaintiff was examined by Dr. Jason Beaman, on December 15, 2023 and December 21, 2023, who conducted an independent medical examination regarding Plaintiff's abuse and legal disabilities (***Exhibit 3 – Forensic Report by Dr. Jason Beaman***).

71.    Dr. Beaman documented the abuse at issue and diagnosed Plaintiff with Major Depressive Disorder and Posttraumatic Stress Disorder. Both Major Depressive Disorder and Posttraumatic Stress Disorder are legal disabilities under, *inter alia*, the American Disabilities Act. Dr. Beaman also outlined other aspects of Plaintiff's disabilities that she has suffered because of and since the time of Garner's abuse.

72.    Prior to the day of Garner's arrest, he even exchanged text messages with Plaintiff. He expressed to Plaintiff his concerns about another female graduate from Mustang High School reporting his behaviors.

73.    The first time Plaintiff felt that she had the opportunity to escape Garner's control and abuse was the day she first contacted the Mustang Police Department in January 2023, which was prior to Garner's arrest. Her contact with the police led to Garner's arrest.

## CAUSES OF ACTION

### Count 1 – Violations of 42 U.S.C. § 1983
### (Against Mustang School District)

74.    Under the Fifth and Fourteenth Amendments, Plaintiff has the right to Due Process and Equal Protection of the Law.

75.    At all times relevant hereto, it was clearly established that Plaintiff had fundamental rights to physical safety and to be free from the infliction of unnecessary pain.

76.    At all times relevant hereto, Defendant Mustang School District was a state actor acting under the color of state law.

77.    Mustang School District denied Plaintiff her rights to Due Process and Equal Protection of the Law by:

  a. enacting inadequate policies, specifically regarding the reporting of suspected sexual misconduct to law enforcement;

  b. failing to enact and implement adequate policies concerning sexual abuse of students by adults on campus;

  c. failing to remove suspected sexual predators from campus;

  d. failing to remove students from classrooms or offices occupied by suspected sexual predators;

  e. failing to investigate Garner properly before and after these referenced allegations;

  f. failing to train and supervise Garner and others properly;

  g. failing to hire, train, and supervise other teachers and/or administrators properly;

  h. failing to report sexual misconduct to law enforcement;

  i. failing to report sexual misconduct to parents of victims;

  j. failing to properly investigate Garner's misconduct;

   k. continuing to employ Garner and allow him unfettered, unsupervised interaction with students;

   l. permitting Garner to have a master key to take students to a more secluded location that would facilitate his sexual misconduct;

   m. failing to adequately train and supervise the Mustang School District's staff and employees; and

   n. exhibiting deliberate indifference to the sexual misconduct directed at Plaintiff and others like her.

78. Mustang School District has an unconstitutional custom or policy of:

   a. failing to properly investigate criminal misconduct against students;

   b. failing to report criminal misconduct against students;

   c. discounting the credibility of students' allegations;

   d. failing to adequately train and supervise employees with regard to the investigation and reporting of sexual abuse of students; and

   e. failing to enact policies that require adherence to reporting requirements.

79. Mustang School District's custom or policy was demonstrated by the fact that Mustang School District received multiple allegations of misconduct regarding Garner, yet failed to investigate those allegations.

80. Defendant's policy is attributable to school district policymakers including, but not limited to, Superintendent, Sean McDaniel, and the Mustang Board of Education.

81. The inadequate policies and resulting failures to train allowed Garner, as a Mustang School District employee, to violate Plaintiff's constitutional rights to equal protection and due process.

82. Further, Defendant affirmatively acted to create, or increased the Plaintiff's

exposure and/or vulnerability to, or danger from, Garner's misconduct.

83.    Molestation of students at a high school and during school sponsored activities is a danger to those students.

84.    A school environment where children are feloniously touched and/or receive lewd or lascivious communications from adults is a dangerous environment.

85.    Mustang School District is a dangerous environment for its students, including Plaintiff.

86.    Activities sponsored by and under the supervision and control of Mustang School District were dangerous environments for its students, including Plaintiff.

87.    Plaintiff was a member of a limited and specifically definable group—namely, female, minor students.

88.    Mustang School District created the danger or increased Plaintiff's vulnerability to the danger by effectively ignoring previous allegations of sexual misconduct by Garner; continuing to allow Garner unfettered and unsupervised access to students in his classroom; not effectively investigating allegations of misconduct by Garner; and/or not immediately reporting the allegations of misconduct to law enforcement and/or the students' parents.

89.    Mustang School District's conduct put Plaintiff and others like her at substantial risk of serious, immediate, and proximate harm. That risk included the risk of being abused while at Mustang High School and during school-sponsored activities. Indeed, Plaintiff and other students were abused by Garner *after* Mustang School District had notice of Garner's misconduct.

90.    The risk of danger was obvious or known to Mustang School District, including disclosure of Garner's misconduct to Superintendents, Principals, and other employees.

91.    Mustang School District's actions and inactions created an opportunity for Garner to continue to abuse Plaintiff and other students, as those actions stripped necessary aid from

16

Plaintiff and others. Reporting Garner's misconduct to law enforcement and/or victims' parents could have enabled law enforcement, regulatory bodies, or parents to have sheltered Plaintiff and other students from Garner's predatory behavior, including by removing Garner from Mustang School District, removing Plaintiff and/or other students from Mustang School District, or otherwise preventing Garner from further access to Mustang students including Plaintiff.

92.    Mustang School District acted recklessly in conscious disregard of this risk. Mustang School District showed deliberate indifference to the actions of Garner, described above.

93.    Mustang School District's conduct shocks the conscience.

94.    Mustang School District's and its officials' failings as described above resulted in Plaintiff and other students suffering severe emotional distress, psychological damage, significant pain and suffering, and/or personal humiliation.

## Count 2 – Violations of Title IX
### (Against Mustang School District)

95.    Mustang School District receives federal financial assistance.

96.    Defendant's disregard of the sexual misconduct of Garner was so severe and objectively offensive that it deprived Plaintiff of educational opportunities and benefits provided by her public schooling.

97.    Defendant created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) (Title IX), because, *inter alia*:

     a.   Plaintiff was a member of a protected class;

     b.   Plaintiff was subjected to sexual harassment in the form of sexual pursuit and sexual misconduct by a person on campus of the Mustang School District;

     c.   Plaintiff was subject to harassment based on her sex; and

     d.   Plaintiff was subjected to retaliation.

98. Plaintiff suffered sexual harassment and/or abuse; therefore, the discrimination was on the basis of sex. In addition, the discrimination was on the basis of sex because only females endured the abuse. Upon information and belief, no male students were subjected to the abuses suffered by Plaintiff or the other female victims.

99. Plaintiff was subjected to a hostile educational environment created by Mustang School District's lack of policies and procedures and failure to properly investigate and/or report sexual misconduct.

100. Mustang School District and its officials had knowledge, including actual and constructive knowledge, of Garner's sexually inappropriate conduct preceding his arrest.

101. Teachers, principals, and administrators are appropriate persons to receive complaints for purposes of a Title IX claim.

102. Further, McDaniel was the appropriate person to receive complaints of sexual misconduct at the Mustang School District, as his exercised control over Garner and/or Mustang High School, where Garner's misconduct occurred.

103. Garner's misconduct was a substantial danger and risk to the Mustang School District's students.

104. Mustang School District had evidence of more than a single, uncorroborated report of inappropriate conduct towards students by Garner.

105. The harassment suffered by Plaintiff was severe, pervasive, and objectively offensive.

106. Mustang School District had sufficient control over Garner and Mustang High School to confer the ability to remedy Garner's misconduct.

107. Mustang School District acted with deliberate indifference by failing to properly investigate allegations of Garner's misconduct and to inform law enforcement or other governmental

officials. Mustang School District's inactions were clearly unreasonable in light of the known circumstances.

108.    Mustang School District's actions and inactions caused students, including Plaintiff, to undergo further sexual misconduct by Garner and made them vulnerable to that sexual misconduct.

109.    Mustang School District persisted in its actions and inactions even after it had actual knowledge of Garner's sexual misconduct.

110.    Mustang School District's failure to promptly and appropriately respond to Garner's sexual harassment and sexual misconduct resulted in Plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefit of, and/or being subjected to discrimination in the Mustang School District's education program in violation of Title IX.

111.    Plaintiff and other girls similarly situated did not receive an equal education as the boys because they were subjected to sexual harassment, sexual abuse, and/or inappropriate conduct by Garner.

112.    Mustang School District failed to take immediate, effective remedial or preventative steps to resolve, investigate, or prevent further sexual assaults. Instead, Mustang School District acted with deliberate indifference toward Plaintiff and other female students.

113.    Mustang School District's response was clearly unreasonable in light of the circumstances known to them.

114.    Mustang School District's actions, including but not limited to its failure to effectively and immediately investigate Garner's misconduct and to continue to allow Garner unfettered and unsupervised access to children, were not reasonable responses to the substantial risk of sexual misconduct.

115.    Mustang School District dismissed allegations of Garner's sexual misconduct.

116.   In response to allegations of Garner's sexual misconduct, Mustang School District did not conduct a legitimate investigation.

117.   Mustang School District could have exercised its inherent authority over school property to immediately prohibit Garner from entering school property and abusing Plaintiff and other students. It did not.

118.   Mustang School District engaged in a pattern and practice of behavior that failed to fully investigate, alert, and protect students from sexual misconduct within the school district.

119.   Mustang School District's actions were the direct and proximate cause of Plaintiff being deprived of a safe and harassment-free educational environment.

120.   As a result of the Mustang School District's actions, Plaintiff has suffered and continues to suffer severe emotional distress and/or phycological damage and/or significant pain and suffering and/or personal humiliation.

### Count 3 – Negligence
### (Negligent Hiring, Retention, Training, Supervision, and Premises Liability)

121.   Defendant is liable to Plaintiff for negligence.

122.   Defendant has a special relationship with its students, that includes *in loco parentis*, and have special duties to protect its students, including Plaintiff.

123.   Defendant failed in its duties to Plaintiff by, *inter alia*:

   a.   Allowing Garner access to children after allegations that he was abusing them;

   b.   Allowing Garner access to children after learning that he was abusing them;

   c.   Failing to report Garner to police and the Department of Human Services after numerous complaints by students about Garner's inappropriate conduct.

   d.   Negligently retaining Garner as a teacher and advisor after Defendant knew or should have known of Garner's inappropriate sexual conduct toward one or

more students;

e.  Negligently failing to timely and adequately act upon and investigate the stated, perceived, or obvious inappropriate behavior by Garner towards one or more students;

f.  Failing to protect Plaintiff from harm inflicted upon them while in the Mustang School District's control or control of its agents, employees, and persons authorized to be on campus;

g.  Negligently allowing Garner to be on campus;

h.  Negligently hiring Garner and McDaniel;

i.  Negligently training the superintendents, principals, staff, and its students with regard to policies and procedures related to sexual harassment, sexual misconduct and inappropriate sexual conduct;

j.  Negligently supervising Garner, superintendents, and principal.

k.  Negligently supervising Garner, even after numerous complaints by students about Garner's inappropriate conduct.

l.  Failing to exercise reasonable care to disclose to students and/or their parents the existence of dangerous defects, such as locations where a student could be subjected to sexual misconduct, including behind doors, in hallways, in closets, in classrooms, by an unsupervised sexual predator, known to Defendant, but where unlikely to be discovered by students;

m. Failing to exercise reasonable care to keep the premises in a reasonably safe condition for the reception of students, such as by providing locations where a student could be subjected to sexual misconduct, such as behind doors, in hallways, in closets, in classrooms, by an unsupervised sexual predator.

124.    Further, the lack of any mechanism or training to the students attending the Mustang School District to make complaints of inappropriate behavior and actions in an environment free of retaliation and with reasonable assurance of confidentiality and safety resulted in the creation of an atmosphere in which the improper contact was permitted and allowed to occur.

125.    Defendant failed to have in place procedures and policies for training, supervising, and educating its employees in the detection, reporting and/or supervision of alleged or suspected incidents of offensive acts and acts of sexual misconduct.

126.    To the extent that Defendant had any procedures and policies for training, supervising and educating its employees in the detection, reporting and/or investigation of alleged or suspected incidents of offensive acts and acts of sexual misconduct in place, those procedures and policies were inadequate and likely to result in the violation of a student's constitutional rights.

127.    Defendant failed to take sufficient remedial action to correct, eliminate and/or prevent the recurrence of the offensive and unconstitutional acts described above once its employees perceived, knew, or had reason to know that Garner posed a risk of sexual abuse.

128.    Defendant had a duty to police the misconduct of its personnel under its immediate control and to protect the students from violations of the students' constitutional rights to bodily integrity and to be free from intrusions while attending a public mandated course of education.

129.    The aforementioned conduct by Garner and other school officials was done within the scope of their employment and course of their performance of their official responsibilities at the Mustang School District, under the color of laws, statutes, ordinances, regulations, practices, customs and usage of the State of Oklahoma and the Mustang School District, and utilized the respect and authority granted to them by state and local law.

130.    The Defendant had a duty to implement procedures and policies for training, hiring, supervising and educating its employees in the detection, reporting and/or investigation of

alleged or suspected incidents of offensive and unconstitutional acts and misconduct.

131.    Defendant failed to properly implement policies and procedures and/or follow its own procedures and policies with regard to screening, hiring, training, and supervision or its employees.

132.    Defendant was negligent in regard to providing a safe and secure environment for its students and was negligent in its dealings with school employees.

133.    Defendant failed to have adequate policies and procedures in place to prevent the types or harm that was inflicted upon Plaintiff.

134.    Defendant failed to provide Plaintiff with a means to voice her complaints and concerns without fear of reprisal.

135.    Defendant's negligence, as described above, proximately caused Plaintiff's injuries, severe emotional trauma and distress, pain and suffering and the damages sought by Plaintiff herein.

**Count 4 – Negligence Per Se**
**(Failure to Report)**

136.    Defendant and its employees, and/or agents had a duty to report allegations of Garner's misconduct to the Oklahoma Department of Human Services ("DHS") every time a complaint was made against Garner. *See* 10A O.S. § 1-2-101(B)(1).

137.    That subsection requires "[e]very person having reason to believe that a child under the age of eighteen (18) years is a victim of abuse or neglect shall report the matter promptly to the Department of Human Services."

138.    The Oklahoma Legislature promulgated the reporting requirements to prevent the type of injuries inflicted upon Plaintiff.

139.    The Oklahoma Legislature state this legislative purpose in 10A O.S. § 1-1-102(A)(3): "Because the state has an interest in its present and future citizens as well as a duty to

protect those who, because of age, are unable to protect themselves, it is the policy of this state to provide for the protection of children who have been abused or neglected and who may be further threatened by the conduct of persons responsible for the health, safety, and welfare of such children."

140.    Oklahoma's child abuse reporting laws express the State's strong public interest in protecting children from abuse by the policy of mandatory reporting of actual and suspected child abuse or neglect to appropriate authorities and agencies.

141.    Defendant failed to report to the DHS, even though Defendant had information regarding Garner's misconduct towards students that required reporting.

142.    The failure to report by Defendant was the direct and proximate cause of the continued abuse of Plaintiff.

143.    The failure to report by Defendant caused Plaintiff mental anguish and physical injury.

144.    Defendant's failures to abide by its statutory duties is negligence *per se.*

**Count 5 – Assault and Battery**
**(Against Garner)**

145.    Garner acted intentionally with the intent of making harmful contact with Plaintiff.

146.    Garner acted without the consent of Plaintiff.

147.    Garner's actions resulted in harmful contact with Plaintiff.

148.    As a direct result of the assault and battery, Plaintiff has suffered injuries and damages.

149.    The actions of Garner continued until the day of his arrest on February 1, 2023, and were reckless and in disregard for the rights of others, including the rights of Plaintiff.

## Count 6 – Intentional Infliction of Emotional Distress
### (Against Garner)

150.    The physical and mental abuse that Garner inflicted on Plaintiff was done maliciously and sadistically.

151.    Garner's actions were extreme and outrageous and beyond the bounds of decency.

152.    Garner's actions were atrocious and utterly intolerable in a civilized society.

153.    As a direct result of Garner's actions, Plaintiff was severely traumatized, beyond which a reasonable young girl would be expected to endure.

154.    Garner intentionally and/or recklessly caused Plaintiff emotional distress by his actions, including but not limited to threatening to sabotage Plaintiff's college and dental school career if she ever came forward.

155.    Garner's actions were intentional and/or reckless, with disregard for the rights of others, including the rights of Plaintiff.

## PRAYER

156.    Plaintiff respectfully requests judgment in her favor and against Defendants as follows:

    a.    compensatory damages, including Plaintiff's physical damages as well as for her psychological and emotional distress in excess of $75,000.00;

    b.    punitive damages to be determined by the Court and/or jury;

    c.    injunctive relief;

    d.    costs;

    e.    interest;

    f.    reasonable attorneys' fees; and

    g.    all other damages or relief deemed appropriate by the Court or jury, whether requested herein or at a later date.

Respectfully submitted,


 /s/ GERARD F. PIGNATO
GERARD F. PIGNATO, OBA #11473
MATTHEW C. KANE, OBA #19502
**RYAN WHALEY**
400 North Walnut Avenue
Oklahoma City, Oklahoma 73104
(405) 239-6040
(405) 239-6766 FAX
jerry@ryanwhaley.com
mkane@ryanwhaley.com

and

MEAGAN CROCKETT-EDSALL, OBA #34954
**COAST TO COAST LEGAL, PLLC**
22601 Forester Lane
Edmond OK 73025
(408) 221-8159
meagan@coast2coastlegal.com

and

JOHN BRANUM, OBA #20165
9600 South May Avenue
Oklahoma City, Oklahoma 73159
Telephone:    800-318-9950
Facsimile:    800-418-8210
Email: all@branumlawfirm.com
*Attorneys for Plaintiff*

26