UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JANE DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-25-107-G |
| ) | |
| INDEPENDENT SCHOOL DISTRICT ) | |
| NO. 69 OF CANADIAN COUNTY, ) | |
| a/k/a Mustang School District, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Now before the Court is a Motion to Dismiss (Doc. No. 31) filed by Defendant Independent School District No. 69 of Canadian County, a/k/a Mustang School District ("Mustang"). Plaintiff Jane Doe has responded (Pl.'s Resp., Doc. No. 37; Pl.'s Suppl., Doc. No. 40) and Mustang has replied (Doc. No. 41).

I.   *Plaintiff's Allegations*

Plaintiff alleges that she attended Mustang High School ("MHS"), a school in the Mustang School District in Canadian County, Oklahoma, from 2013 to 2017, while she was under 18 years of age. *See* Compl. ¶ (Doc. No. 1). While she was a student, Defendant Raymond Thomas Garner was a teacher and adviser at MHS. *Id.* ¶¶ 4, 12-13.

Between 2014 and 2017 Defendant Garner groomed, molested, raped, stalked, and harassed Plaintiff both at MHS and off campus. *See id.* ¶¶ 12-39. Plaintiff graduated from MHS in May of 2017 and started attending college in Oklahoma City that fall. *Id.* ¶¶ 1, 40. Defendant Garner continued to make contact with and harass Plaintiff after graduation.

*Id.* ¶¶ 40-42. Plaintiff was "concerned that if she did not comply with Garner's requests, he would ruin her career . . . [and] life and seriously harm her." *Id.* ¶ 42.

Plaintiff first contacted the Mustang Police Department in January 2023. *Id.* ¶ 73. Plaintiff's contact with the police led to Defendant Garner's arrest on February 1, 2023. *Id.* ¶¶ 43, 73. Defendant Garner continued to "contact, intimidate, and try to control Plaintiff up until the day he was arrested." *Id.* ¶ 43. Defendant Garner was arrested upon multiple charges of rape, lewd acts to a child, and forcible sodomy. *Id.*[1]

"After Garner's arrest and within two (2) years of the filing of" the Complaint, Plaintiff learned that Defendant Mustang "knew of some of Garner's issues giving rise to this lawsuit and that there were other stories and victims" related to Defendant Garner. *Id.* ¶¶ 44-50. Defendant Garner had been investigated and placed on administrative leave from MHS in 2004, 2007, and 2017 for his inappropriate conduct. *See id.* ¶¶ 51-53. Defendant Mustang had notice of but failed to appropriately respond to Defendant Garner's misconduct and facilitated his "predatory behavior" in various ways. *Id.* ¶¶ 54-61.

Plaintiff was physically, mentally, and emotionally injured by Defendants' actions. *See id.* ¶¶ 71, 156. She seeks compensatory and punitive damages and unspecified injunctive relief. *See id.* ¶ 156.

Plaintiff now brings federal claims against Defendant Mustang pursuant to 42

---

[1] The Court takes judicial notice of the docket for Defendant Garner's state-court criminal proceeding, *State v. Garner*, No. CF-2023-269 (Canadian Cnty. Dist. Ct.), which is publicly available through https://www.oscn.net. The docket reflects that Defendant Garner pled *nolo contendere* to multiple charges and was sentenced on February 23, 2026, to concurrent prison terms resulting in 17 years' imprisonment.

U.S.C. § 1983 and title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681 et seq. *See* Compl. ¶¶ 74-120. Plaintiff also brings supplemental state-law claims sounding in negligence and negligence per se against Defendant Mustang and for assault and battery and intentional infliction of emotional distress against Defendant Garner. *See id.* ¶¶ 121-155; *see also* Def. Garner's Answer (Doc. No. 21).

> II. *Federal Rule of Civil Procedure 12(b)(6)*

Citing Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Mustang seeks dismissal of Plaintiff's claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

"[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote and citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

III.   Discussion

    A.  Whether Plaintiff's Federal Claims Are Time Barred

Defendant Mustang argues that Plaintiff's federal claims must be dismissed as time barred. *See* Def.'s Mot. to Dismiss at 12-19; Def.'s Reply at 1-9. "A statute of limitations defense may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) (alteration and internal quotation marks omitted); *see also Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).

    1.  Relevant Standards

        a.  Limitations Periods for § 1983 and Title IX Claims

Plaintiff's constitutional claims, which seek relief for violation of substantive due process and equal protection under the Fourteenth Amendment, are asserted pursuant to 42 U.S.C. § 1983, "a remedial vehicle for raising claims based on the violation of constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016); *see* Compl. ¶ 8. The limitations period for bringing a § 1983 claim, as well as any tolling of that period, "is dictated by the personal injury statute of limitations in the state in which the claim arose." *Schell v. Chief Just. & Justs. of Okla. Sup. Ct.*, 11 F.4th 1178, 1191 (10th Cir. 2021) (internal quotation marks omitted); *see Owens v. Okure*, 488 U.S. 235, 236 (1989); *Mondragón v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). The statute of limitations for such personal-injury suits in Oklahoma is two years, *Schell*, 11 F.4th at 1191 (citing Okla. Stat. tit. 12, § 95(A)(3)), meaning that "the statute of limitations in a § 1983

4

action filed in Oklahoma is two years from the time the cause of action accrued." *Bedford v. Rivers*, No. 98-6389, 1999 WL 288373, at *1 (10th Cir. May 10, 1999).

Title IX provides in relevant part that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "[S]exual harassment is a form of discrimination on the basis of sex and is actionable under Title IX." *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1152 (10th Cir. 2006). "There is no applicable federal statute of limitations for actions brought pursuant to Title IX, but federal courts routinely borrow the state statute of limitations applicable to personal injury actions" "or the same state statute of limitations applicable to § 1983 actions." *Nunley v. Pioneer Pleasant Vale Sch. Dist. #56*, 190 F. Supp. 2d 1263, 1263 (W.D. Okla. 2002). Accordingly, federal courts in Oklahoma apply the two-year statute of limitations prescribed by title 12, section 95(A)(3) of the Oklahoma Statutes to Title IX claims as well as to § 1983 claims. *See, e.g.*, *id.* at 1264; *Thompson v. Indep. Sch. Dist. No. I-1 of Stephens Cnty.*, No. CIV-12-13-M, 2013 WL 1915058, at *5 (W.D. Okla. May 8, 2013).

b. *Accrual of the Action*

Although the length of the limitations period for federal civil rights claims is determined by reference to Oklahoma law, "[f]ederal law governs when the action accrues" and thus when "the limitations period starts to run." *McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011); *Varnell v. Dora Consol. Sch. Dist.*, No. 12-CV-905, 2013 WL 12146483, at *6 (D.N.M. May 13, 2013) (R. & R.) (citing *Mondragón*, 519 F.3d at 1082), *adopted*, 2013 WL 12149185 (D.N.M. June 24, 2013), *and aff'd*, 756 F.3d 1208 (10th Cir.

2014); *see Wallace v. Kato*, 549 U.S. 384, 388 (2007).

> The Supreme Court has explained that a cause of action accrues when "the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (quotation and citation omitted). In particular, "[a] civil rights action accrues when facts that would support a cause of action are or should be apparent." *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) (internal quotation and citation omitted). A plaintiff "need not have conclusive evidence of the cause of an injury in order to trigger the statute of limitations." *Alexander v. Oklahoma*, 382 F.3d 1206, 1216 (10th Cir. 2004). Nor must a plaintiff "know all of the evidence ultimately relied on for the cause of action to accrue." *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993). Instead, the court must determine "whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm. . . . ." *Alexander*, 382 F.3d at 1216.

*Varnell*, 2013 WL 12146483, at *6 (alteration in original).

Stated differently, a Title IX or § 1983 claim accrues, and the applicable limitations period begins to run, "when the plaintiff knows or should know that his or her . . . rights have been violated." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998) (internal quotation marks omitted). "[T]he standard for determining whether a federal claim has accrued is" an objective one. *Alexander*, 382 F.3d at 1219 n.6.

### 2. Discussion

Taken as true, Plaintiff's factual allegations establish that the complained-of conduct by Defendants began when she was a minor student at MHS, prior to Plaintiff turning 18 years old in December of 2016. *See* Compl. ¶¶ 1, 10-12, 14; *id.* Ex. 3 (Doc. No. 1-3) at 2.

Defendant Mustang argues that (1) Plaintiff's claims accrued while she was a minor; (2) the two-year limitations period was tolled until December 2016, when Plaintiff turned 18; (3) upon Plaintiff turning 18, the limitations period began to run and Plaintiff had at

most two years—i.e., until December 2018—to bring her claims against Defendant Mustang; and (4) because this lawsuit was not filed until January 23, 2025, well after expiration of the two-year limitations period, Plaintiff's claims against Defendant Mustang should be dismissed as untimely. *See* Def.'s Mot. to Dismiss at 12-15, 16-19; Def.'s Reply at 1-7; *Alexander*, 382 F.3d at 1217 (citing Okla. Stat. tit. 12, § 96).

Plaintiff's Response does not dispute Defendant Mustang's underlying argument that the cause of action accrued before Plaintiff turned 18. Plaintiff argues, however, that the statute of limitations should be tolled for her claims because "exceptional circumstances" are present. Pl.'s Resp. at 12-15; *see Alexander*, 382 F.3d at 1219-20; *Young v. Davis*, 554 F.3d 1254, 1258 (10th Cir. 2009). Specifically, Plaintiff argues that Defendant Garner's harassment and manipulation, although it began while she was a student, did not stop until Defendant Garner was arrested on February 1, 2023. *See* Pl.'s Resp. at 12; Compl. ¶ 43. Therefore, until that date, "Plaintiff suffered from a legal disability [that] should equitably toll the 2-year statute of limitations," rendering the Complaint timely filed. Pl.'s Resp. at 13. Plaintiff requests that the Court "establish[] a precedent that there is now equitable tolling in Oklahoma when a wrongdoer continues to interact with the victim in such a manner that would cause a reasonable person to fear coming forward with incriminating information or [a] civil lawsuit." Pl.'s Suppl. at 2-3.

Having reviewed the relevant authorities, the Court declines to create such precedent. Although Plaintiff alleges mental and emotional injury, there is no indication of impaired competency. In fact, Plaintiff graduated high school, attended college, was attending dental school, and has held several jobs. *See* Compl. ¶ 40; *id.* Ex. 3, at 3. "No

7

matter how the psychological term or description is couched, [Plaintiff] is not under legal disability if able to conduct her business affairs for a number of years." *Lovelace v. Keohane*, 831 P.2d 624, 629 (Okla. 1992). While Defendant Garner's ongoing improper interaction with Plaintiff would have been frightening, such conduct does not equate to the rare types of "exceptional circumstances" that have been recognized by controlling authority to warrant equitable tolling. *See Alexander*, 382 F.3d at 1219-20 (discussing the potential application of equitable tolling to claims raised by victims of the My Lai Massacre and the Tulsa Race Massacre). Finally, nothing in the Complaint or Plaintiff's briefing establishes that the Court's application of Oklahoma's statute of limitations to these claims would be "contrary to" or "frustrate" the federal policy goals underlying § 1983 or Title IX. *Id.* at 1217 n.5.

Plaintiff alternatively argues that the Court should apply the statute of limitations set forth in title 12, section 95(A)(7) of the Oklahoma Statutes, which prescribes:

> 7. An action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of criminal actions, as defined by the Oklahoma Statutes, may be brought against any person incarcerated or under the supervision of a state, federal or local correctional facility on or after November 1, 2003:
>
>   a. at any time during the incarceration of the offender for the offense on which the action is based, or
>
>   b. within five (5) years after the perpetrator is released from the custody of a state, federal or local correctional facility, if the defendant was serving time for the offense on which the action is based[.]

Okla. Stat. tit. 12, § 95(A)(7); *see* Pl.'s Suppl. at 1-2.

Even assuming the Court was permitted to apply a statute of limitations other than

that for "personal injury," Plaintiff has not shown that section 95(A)(7) could properly be invoked here. Plaintiff's claims against Defendant Mustang are not brought against a "person," as contemplated by section 95(A)(7), but against a public school district. Expanding the reach of this statute falls within the province of the Oklahoma Legislature, which "is primarily vested with the responsibility to declare the public policy of" the State of Oklahoma. *Griffin v. Mullinix*, 947 P.2d 177, 179 (Okla. 1997).[2]

For all these reasons, Plaintiff's § 1983 and Title IX claims against Defendant Mustang must be dismissed as untimely filed.[3]

### B. Plaintiff's State-Law Claims

Plaintiff's invocation of the Court's subject-matter jurisdiction in this matter was premised upon the federal questions presented by Plaintiff's § 1983 and Title IX claims. *See* Compl. ¶¶ 5-6 (citing 28 U.S.C. §§ 1331, 1343). Those claims are now subject to dismissal, and Plaintiff's remaining claims against both Defendant Mustang and Defendant Garner are premised only upon violations of Oklahoma law. *See id.* ¶¶ 121-155.

The pleading reflects that the parties are not diverse, and the record does not evince any other basis for this Court's exercise of jurisdiction over this matter. "When all federal claims have been dismissed, the court may, and usually should, decline to exercise

---

[2] Plaintiff nominally requests that the Court consider allowing leave to amend in lieu of dismissal but fails to offer a basis to find that amendment would resolve the cited deficiencies. *Cf.* LCvR 15.1 (requiring that the proposed pleading be submitted with a motion to amend).

[3] In light of this disposition, the Court does not reach Defendant Mustang's alternative arguments for dismissal.

jurisdiction over any remaining state claims." *Smith*, 149 F.3d at 1156 (citing 28 U.S.C. § 1367(c)(3)). As the parties' claims and defenses "warrant[] a[n] [Oklahoma] state court's consideration," and given the preliminary stage of this case, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims. *Foxfield Villa Assocs., LLC v. Robben*, 967 F.3d 1082, 1102-03 (10th Cir. 2020) (noting that a federal court may choose to retain state-law claims where the parties have already expended "significant resources" on those claims in federal court).

## CONCLUSION

Based upon the foregoing, the Motion to Dismiss (Doc. No. 31) of Defendant Independent School District No. 69 of Canadian County, a/k/a Mustang School District, is GRANTED. Further:

- Plaintiff's federal claims against this Defendant are dismissed without prejudice as untimely filed; and
- The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.

A separate judgment shall be entered.

IT IS SO ORDERED this 6th day of March, 2026.

_____
CHARLES B. GOODWIN
United States District Judge